UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILAD ISKANDER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>PROTECTIVE LIFE INSURANCE CO.,<br><br>　　　　　　Defendant. | No. 2:25-cv-1150-CKD<br><br><br>ORDER |

　　　　This action for breach of contract and other claims was originally filed in the Solano Superior Court and removed to federal court on April 18, 2025. (ECF No. 1.) It proceeds on the First Amended Complaint (FAC) filed May 15, 2025. (ECF No. 12.) The parties have consented to magistrate judge jurisdiction for all purposes, including final entry of judgment. (ECF No. 11.) Before the court is defendant's motion to dismiss the FAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 13.) Plaintiff has filed an opposition (ECF No. 14), and defendant has filed a reply (ECF No. 15). On July 9, 2025, the motion was taken under submission without appearance and argument. (ECF No. 16.) For the reasons set forth below, the Court will grant the motion to dismiss in part and deny it in part.

///

///

///

1

I. The Complaint

The FAC alleges as follows:

Plaintiff Milad Iskander is a resident of Vallejo, California, and defendant Protective Life Insurance Company has its principal place of business in Omaha, Nebraska. (FAC, ¶¶ 1, 2.) In January 1987, plaintiff purchased a term life insurance policy from defendant with an initial monthly premium of $851.00. (FAC, ¶ 5.)

Thirty years later, in May 2017, defendant converted plaintiff's term life policy into a universal life policy with a lower monthly premium of $706.64. (FAC, ¶ 6.) From March 2018 through October 2024, plaintiff paid a total of $63,585.60 in premiums on the universal life policy, which provides a death benefit of $175,000.00. (FAC, ¶ 8.)

> Plaintiff, through ongoing communications with Defendant's agents and customer service, discovered that Defendant had been systematically overcharging Plaintiff for decades. Specifically, Plaintiff was charged approximately $250.00 more per month between 1987 and 2007 and an additional $150.00 per month following the policy conversion in 2017. These overcharges persisted without Plaintiff's knowledge, as Defendant failed to disclose the correct premium rates.

(FAC, ¶ 9.)

Plaintiff alleges that the 2017 conversion to a universal policy "did not align with the policy's terms, and Defendant continued to overcharge Plaintiff, leading to significant financial losses." (FAC, ¶ 6.)

> The life insurance contract provided that premiums would be fixed or calculated according to a specific rate schedule and formula[.] . . . Plaintiff is informed and believes that the policy did not permit increases of the nature and extent that occurred, and Defendant's charges exceed the permissible rates under the policy's terms.

(FAC, ¶ 7.) Plaintiff alleges that defendant's "improper billing practices constitute a continuing violation . . . an ongoing pattern of misbilling that continued through the present." (FAC, ¶ 10.)

Plaintiff asserts claims of breach of contract, unfair business practices under California's Unfair Competition Law (UCL), and intentional infliction of emotional distress. (FAC at 4-6.) Plaintiff seeks compensatory and punitive damages and restitution. (FAC at 7.)

II. Motion to Dismiss

Defendant argues that the FAC should be dismissed because it fails to meet the heightened pleading standard under Rule 9(b) for a complaint that "sounds in fraud." Defendant also argues that the UCL claim should be dismissed because plaintiff has an adequate remedy at law, and that the intentional infliction of emotion distress (IIED) claim fails because plaintiff has not alleged outrageous conduct. (ECF Nos. 13 & 15.)

Plaintiff argues that his claims do not "sound in fraud" but arise primarily from defendant's breach of contract, such that the general Rule 8(a) pleading standard applies. Plaintiff further argues that the UCL claim is not barred at the pleading stage and that he has adequately pled the IIED claim. (ECF No. 14.)

A. Legal Standards

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), and construe the pleading in the light most favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

A motion to dismiss pursuant to Rule 12(b)(6) may also challenge a complaint's compliance with Federal Rule of Civil Procedure 9(b) where fraud is an essential element of a claim. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). Rule 9(b), which provides a heightened pleading standard, states: "In alleging fraud or mistake, a party must

3

1  state with particularity the circumstances constituting fraud or mistake. Malice, intent,
2  knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.
3  9(b). These circumstances include the "'time, place, and specific content of the false
4  representations as well as the identities of the parties to the misrepresentations.'" Swartz v.
5  KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (quoting Edwards v. Marin Park,
6  Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)); see also Kearns v. Ford Motor Co., 567 F.3d 1120,
7  1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when,
8  where, and how' of the misconduct charged"). "Rule 9(b) demands that the circumstances
9  constituting the alleged fraud be specific enough to give defendants notice of the particular
10 misconduct . . . so that they can defend against the charge and not just deny that they have done
11 anything wrong." Kearns, 567 F.3d at 1124.

   B. Analysis

   1. Rule 9(b) Pleading Standard

   The first issue is whether the FAC is governed by the general pleading standard in Rule 8(a) or the heightened pleading standard in Rule 9(b).

   Rule 8(a) requires that a pleading be "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Each allegation must be simple, concise, and direct. Rule 8(d)(1); see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (overruled on other grounds) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").

   Rule 9(b) applies to claims that are "grounded in fraud" or "sound in fraud," regardless of whether fraud is an element of the claim. Vess, 317 F.3d at 1103-04 (9th Cir. 2003). Under California law, the elements of fraud are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damages." Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990 (2004) (citing Lazar v. Superior Ct., 12 Cal. 4th 631, 638

4

(1996)). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." Vess, 317 F.3d at 1105. "To ascertain whether a complaint 'sounds in fraud,'" the court looks to "the language and structure of the complaint." In re Rigel Pharms., Inc. Sec. Litig., 697 F.3d 869, 885-86 (9th Cir. 2012) (quoting Rubke v. Capitol Bancorp Ltd, 551 F.3d 1156, 1161 (9th Cir. 2009)). If the plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that conduct as the basis of a claim, . . . the claim is said to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." Vess, 317 F.3d at 1103-04 (collecting cases).

Plaintiff argues that the gravamen of the complaint is defendant's breach of its contractual obligations, not its misrepresentations or deceit. The FAC alleges that defendant "systematically overcharg[ed] Plaintiff for decades" in an "ongoing pattern of misbilling" because the "life insurance contract . . . did not permit increases of the nature and extent that occurred, and Defendant's charges exceeded the permissible rates under the policy's terms." (FAC, ¶¶ 7, 9.) Plaintiff asserts that these allegations are "to demonstrate breach of contract and related statutory violations, not to establish the elements of fraud such as intent to induce reliance, misrepresentation, or justifiable reliance." Plaintiff maintains that the FAC does not allege, nor rely upon, a "unified course of fraudulent conduct" as described in Vess, supra. (ECF No. 14 at 3.)

Defendant cites two cases for the proposition that Rule 9(b) applies to complaints alleging overcharging by insurance companies. In Parducci v. Overland Solutions, Inc., 399 F. Supp. 969, 972-73 (N.D. Cal. July 17, 2019), plaintiff sued an insurance company and a property inspection company, claiming his grandparents had been overcharged for their homeowner's replacement cost insurance policy. The complaint "generally describe[d] a scheme . . . involving [the property inspector] providing inflated replacement cost value estimates of homes to [the insurer], allowing [the insurer] to overcharge customers on their premiums." Id. at 977. Plaintiff brought claims of unfair business practices under the UCL, intentional misrepresentation, negligent misrepresentation, elder abuse, breach of contract, and breach of the covenant of good faith and fair dealings against the insurer. Id. at 974. The district court found that "Rule 9(b) requires

Parducci's causes of action for intentional misrepresentation, negligent misrepresentation, and elder abuse to be pleaded with specificity because each claim sounds in fraud." Id. At 977. The court dismissed these claims for failure to meet the Rule 9(b) pleading standards. Id. at 977, 982-83. The court also dismissed the UCL claim under Rule 9(b).[1] Id. at 982 (finding UCL claim concerns "the fraudulent scheme that is at the heart of this action"). The court dismissed the breach of contract claim for different reasons, not involving Rule 9(b) pleading. Id. at 980-81. Parducci is distinguishable from the instant case, which does not allege a multi-party "scheme" to mispresent insurance premium amounts nor assert claims of misrepresentation. Notably, Parducci does not apply the Rule 9(b) standard to a breach of contract claim.

Defendant also cites Hilario v. Allstate Insurance Co., 2020 WL 7643233, *1 (N.D. Cal. Dec. 23, 2020), in which plaintiff brought a putative class action alleging that Allstate was "systematically overcharging" policyholders by "knowingly double counting garage space when calculating the total square footage used to determine their home insurance premiums[.]" The district court found that the Rule 9(b) standard applied to plaintiff's UCL claim and that it was insufficiently pled. Id. at *7.

As in Parducci and Hilario, some courts have found that UCL claims are grounded in fraud and subject to Rule 9(b). See Kearns, 567 F.3d at 1125; Gutierrez v. Abbott Labs., No. 2:24-cv-02427-TLN-SCR, 2025 WL 2307848, *8 (E.D. Cal. Aug. 11, 2025) (collecting cases). However, it depends on the nature of the UCL claim. "[F]raud is not a necessary element of a claim under the . . . UCL[.]" Kearns, 567 F.3d at 1125. "The UCL prohibits unfair competition, which it broadly defines as including 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.' [Citation.] Each prong of the UCL is a separate and distinct theory of liability[.]" Kearns, 567 F.3d at 1127, citing South Bay Chevrolet v. General Motors Acceptance Corp., 72 Cal.App.4th 861 (1999).

Here, the Court finds that the FAC does not allege a "unified course of fraudulent conduct." Unlike the two cases cited by defendant, the FAC does not allege that defendant

---

[1] The court dismissed these claims with leave to amend.

6

intentionally misrepresented key facts—i.e., overvalued the home replacement cost or doubled the square footage of the garage—in order to charge higher premiums.  Rather, plaintiff alleges that defendant overcharged him for years while "fail[ing] to disclose the correct premium rates" under the policy; he claims this is an "unlawful and unfair business practice" under the UCL, but not a fraudulent business practice.  (FAC, ¶¶ 18, 19.)  Because plaintiff's claims against his insurer do not "sound in fraud," they are not subject to the heightened pleading requirements of Rule 9(b).  Under the general pleading standard of Rule 8(a), plaintiff has adequately pled his claims.

### 2. UCL Claim

Under the UCL, plaintiff seeks "restitution of all unlawfully charged amounts and injunctive relief . . . to prevent ongoing and future harm to plaintiff and the public."  (FAC, ¶ 21.)

Defendant argues that this claim should be dismissed because plaintiff has not alleged that he lacks an adequate remedy at law.  Defendant further argues that plaintiff has an adequate alternative remedy at law, because both his UCL and breach of contract claim seek reimbursement in the amount of his overpaid premiums.  (See FAC, ¶ 16 (seeking compensatory damages), ¶ 21 (seeking restitution).)

Plaintiff contends that his UCL claim is sufficient at the pleading stage and that restitution and damages are different forms of relief, such that he lacks an adequate remedy at law.

Remedies under the UCL are equitable in nature and legal damages cannot be recovered. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1144 (2003).  UCL remedies are thus generally limited to restitution and prospective declaratory or injunctive relief.  In re Vioxx Class Cases, 180 Cal. App. 4th 116, 130 (Cal. Ct. App. 2009).  The Ninth Circuit has held that plaintiffs seeking equitable relief under the UCL in a federal court sitting under diversity jurisdiction must establish that they lack an adequate remedy at law.  Sonner v. Premier Nutrition Corp., 971 F.3d 834, 844 (9th Cir. 2020).

"Sonner does not require Plaintiffs to 'demonstrate' anything at the pleadings stage."  Murphy v. Olly Public Benefit Corp., 651 F. Supp. 3d 1111, 1129 (N.D. Cal. Jan. 17, 2023).  "While this is true, under Sonner, Plaintiffs must at a minimum allege they have no adequate remedy at law,

even at the motion to dismiss stage." Watson v. Crumbl LLC, No. 2:23-cv-01770-DJC-CKD, 736 F. Supp. 827, 839 (E.D. Cal. June 10, 2024) (collecting cases); see also Guthrie v. Transamerica Life Ins. Co., 561 F.Supp.3d 869, 875 (N.D. Cal. 2021) ("I and many other district judges applying Sonner have understood it to require that a plaintiff must, at a minimum, plead that she lacks adequate remedies at law if she seeks equitable relief.").

As the FAC does not plead the lack of an adequate remedy at law for the UCL claim, the Court will dismiss this claim with leave to amend.

3. Intentional Infliction of Emotional Distress Claim

Plaintiff's emotional distress claims alleges that "[d]efendant's repeated failure to address the overcharges and its disregard for Plaintiff's emotional well-being, even after being notified of the issue, qualifies as extreme and outrageous conduct sufficient to support a claim for emotional distress." (FAC, ¶ 24.) Defendant argues that this claim should be dismissed because defendant's alleged actions do not amount to "outrageous" conduct.

To state a claim for intentional infliction of emotional distress ("IIED") under California law, a plaintiff must show "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" Avina v. United States, 681 F.3d 1127, 1131 (9th Cir. 2012) (quoting Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009)). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1245 (9th Cir. 2013) (internal quotation marks omitted). The defendant must also intend to inflict injury with the understanding that injury will result. Hughes, 46 Cal. 4th at 1051.

Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress. Jang v. Sagicor Life Ins. Co., 2017 WL 7362725, *3 (C.D. Cal. Sept. 11, 2017) (citing Hailey v. California Physicians' Service, 158

Cal. App. 4th 452, 474 (2007)) (other citation omitted).  "In determining whether liability should be imposed for intentional infliction of emotional distress, the cases and commentators have emphasized the significance of the relationship between the parties in determining whether liability should be imposed." Id. (quoting Fletcher v. Western Nat. Life Ins. Co., 10 Cal. App. 3d 376, 403 (1970)).  "An insurer has a special relationship to its insured and has special duties that inhere in the 'great disparity in the economic situations and bargaining abilities of the insurer and the insured.'" Id. (quoting Fletcher, 10 Cal. App. 3d at 403-04).  "While courts have rejected liability where an insurer simply denies insurance benefits, failed to investigate a claim, or violated its duties under the insurance code, courts have sustained IIED claims against insurers where the insurer takes some outrageous action in abuse of its position with the knowledge that a denial of benefits would cause emotional distress." Id. at *4.

Here, defendant had a "special relationship" to plaintiff as his insurer, but the allegations do not concern a denial of benefits; rather, defendant allegedly overcharged plaintiff in monthly premiums for decades.  As discussed above, the gravamen of the action is breach of contract.  In Federal Ins. Co. v. Central Diagnostic Laboratory, 972 F.2d 1338 (9th Cir. 1992) (unpublished), the Ninth Circuit concluded that, where "[a]ll the allegations leading up to the claim for intentional infliction of emotional distress plead a straight breach of contract" against an insurer, the "complaint sounds in contract" and does not "state a cause of action" for IIED.  See, e.g., Transamerica Life Ins. Co. v. Ponso, 2020 WL 6875181, *5 (C.D. Cal. Nov. 18, 2020) (dismissing IIED claim against insurer where "IIED claim relies on the same allegations as [the] breach of contract claim[]" and does not explain how allegations independently demonstrate "outrageousness" or intent to cause emotional distress).

Thus, the Court will dismiss the IIED claim.  Though it seems unlikely plaintiff can cure it, given the nature of this action, he will be granted one opportunity to amend this claim as well.

Accordingly, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion to Dismiss (ECF No. 13) is GRANTED IN PART as follows:

    a. Plaintiff's Claim 2 (unfair competition) is dismissed with leave to amend;

    b. Plaintiff's Claim 3 (intentional infliction of emotional distress) is dismissed

with leave to amend; and

    c. Defendant's motion to dismiss is otherwise DENIED;

2. Plaintiff shall file any amended complaint, labeled "Second Amended Complaint," no later than thirty (30) days from the date of this order; and

3. If plaintiff fails to amend, this action shall proceed on Claim 1 (breach of contract) in the First Amended Complaint.

Dated: September 30, 2025

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/iska1150.mtd_lta